IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| Rashad Armad Allen Battle,<br><br>      Plaintiff,<br>  v.<br><br>Richland County, Crayman Harvey, Antwane Goldwire, Brient Sapp, Jason Church, FNU Havey, Joshua Stackhouse, Rodric Cousar, Ronald Bridgette, Jr., Kelvin Lark, Reginald Faulks, Joyce Turner, Ingrid Holmes,<br><br>      Defendants. | Case No. 8:23-cv-2653-RMG<br><br><br>**ORDER AND OPINION** |

      This matter is before the Court on the Report and Recommendation ("R & R") of the Magistrate Judge. (Dkt. No. 75). Plaintiff Rashad Battle commenced this action against fourteen defendants for multiple claims pursuant to 42 U.S.C § 1983 for events arising from his pretrial detention. The Magistrate Judge issued a R & R on the parties' cross Motions for Summary Judgment (Dkt. Nos. 67, 68), recommending that Defendants' Motion for Summary Judgment be granted as to all claims except for the excessive use of force claim related to the duration of time spent in the restraint chair and that Plaintiff's Motion for Partial Summary Judgment be denied. For the reasons set forth below, the Court adopts the R & R as the Order of the Court, grants in-part and denies in-part Defendant's Motion for Summary Judgment, and denies Plaintiff's Motion for Summary Judgment.

**I.    Background**

      The Court summarizes the allegations from the Amended Complaint to provide a factual background for Plaintiff's claims. Many of these facts are disputed.

1

On December 24, 2022, Plaintiff was arrested, charged with first degree criminal domestic violence, and detained at the Alvin S. Glenn Detention Center ("ASGDC"). During the intake process at ASGDC, Plaintiff complained about a lack of food and water and would kick his cell door and yell for help. (Dkt. No. 28 at 5). On December 25, 2022, the Extraction Defendants informed Plaintiff that as part of the intake process, they would need him to undress and be searched.[1] Plaintiff refused and the Extraction Defendants entered his cell, restrained Plaintiff, removed his clothes, and searched him. (*Id.*). Defendant Turner remained outside the cell holding a body-worn camera throughout, recording the extraction. Plaintiff alleges that as a result, his wrist and pinky finger were broken, but he was not provided with medical attention. (*Id.* at 6). Instead, Plaintiff alleges, Defendants Sapp, Stackhouse, Church, and Bridgette confined Defendant to a restraint chair for six hours. Plaintiff was then seen by a nurse who determined he needed to go to the hospital where, according to Plaintiff, he was treated for nerves, inflammation, and pain. (*Id.*).

On December 30, 2022, Plaintiff asserts that Defendant Cousar facilitated an attack by a fellow inmate. Plaintiff alleges he received multiple stab wounds from the altercation. Following the attack, Plaintiff alleges that he was returned to his cell with "open wounds" and the conditions were unsanitary. Plaintiff alleges that he presented Defendant Cousar

---

[1] Defendants Antwane Goldwire, Brient Sapp, Jason Church, Joshua Stackhouse, Ronald Bridgette, Jr., Kelvin Lark, and Reginald Faulks are corrections officers at ASGDC and are collectively the "Extraction Defendants."

with numerous written requests regarding the conditions of his cell, but that Cousar would discard the requests. (*Id.* at 8). Subsequently, Plaintiff alleges Defendant Sapp and another officer shackled him, exacerbating his injuries, and left him in the shower area for four to six hours while he yelled for help. (*Id.* at 9). On January 4, 2023, Plaintiff was transported to the hospital for treatment of injuries stemming from the December 30 altercation. Plaintiff alleges that Defendants prevented his family from taking photographs of his injuries. (*Id.* at 10). After returning from the hospital, Plaintiff alleges he received minimal treatment and missed doses of his prescribed medicines. (*Id.*).

Based on these allegations, Plaintiff asserted nine causes of action:

1. Excessive use of force and retaliation under the Eighth and Fourteenth Amendments against Defendants Goldwire, Sapp, Church, Havey, Stackhouse, Bridgette, Lark, and Faulks.

2. Excessive use of force and retaliation under the Eighth and Fourteenth Amendments against Defendants Richland County and Harvey.

3. Failure to protect under the Fourteenth Amendment against Defendants Cousar, Turner, and Holmes.

4. Failure to protect under the Fourteenth Amendment against Defendants Richland County and Harvey.

5. Unconstitutional conditions of confinement under the Fourteenth Amendment against Defendants Cousar, Sapp, Stackhouse, Church, Bridgette, and John Doe.

6. Unconstitutional conditions of confinement under the Fourteenth Amendment against Defendants Richland County and Harvey.

7. Deliberate indifference to serious medical needs under the Fourteenth Amendment against all individual Defendants.

8. Deliberate indifference to serious medical needs under the Fourteenth Amendment against Defendants Richland County and Harvey.

9. Gross negligence under the South Carolina Tort Claims Act against Defendant Richland County.

## II. Legal Standard

### A. Magistrate Judge

The Magistrate Judge makes only a recommendation to this Court that has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Where the plaintiff objects to the R & R, the Court "makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id*. Where the plaintiff has not objected to the R & R, the Court reviews the R & R only to "satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Fed. R. Civ. P. 72 advisory committee's note; *see also Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983) ("In the absence of objection ... we do not believe that it requires any explanation.").

### B. Summary Judgment

Summary judgment is appropriate if the movant "shows that there is no genuine dispute as to any material fact" and is therefore entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has made this threshold demonstration, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id*. at 324. Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

### III. Discussion

Defendants' Motion asks the Court to grant summary judgment for all claims in the Amended Complaint. (Dkt. No. 67).

As a preliminary matter, the Court finds that Defendants Turner, Goldwire, and Havey are entitled to dismissal from this action based on a lack of evidence of their involvement in the underlying events. Plaintiff conceded that Defendant "Havey" was a scrivener's error in the caption and that the record does not contain sufficient evidence against Turner and Goldwire. (Dkt. No. 70 at 21). Accordingly, those Defendants are dismissed from this action.

A.  **Excessive Use of Force**

On the first claim for excessive use of force stemming from Plaintiff being extracted from his cell by force and placed into a restraint chair for six hours, the Magistrate Judge recommended granting Defendants' Motion related to the decision to use physical force to subdue him and place the Plaintiff in the restraint chair, but denying the Motion as it relates to the amount of time he was kept in the chair. (Dkt. No. 75 at 22-31).

*Extraction*

The Magistrate Judge ably summarized the testimony and evidence presented by the parties and found that there was no genuine issue of material fact as to whether the Extraction Defendants were justified in entering Plaintiff's cell and using physical force to gain compliance. (Dkt. No. 75 at 39). Plaintiff acknowledged that he was "highly upset," "not in control of [his] emotions" during the intake process, and was kicking and beating on his cell door. (Dkt. No. 67-4 at 7–8). Plaintiff further acknowledged that he intentionally flooded his cell. (*Id.* at 9). "It is simply a truism that when prison inmates are non-compliant with legitimate instructions and prison requirements, physical force sometimes has to be applied in order to gain compliance and maintain institutional security, the security of prison employees, as well as the inmates themselves. It is only when the force used under such circumstances is constitutionally excessive that a viable § 1983 claim is presented." *Singleton v. Brown*, No. CV 9:15-2723-JMC-BM, 2016 WL 11200707, at *13 (D.S.C. Sept. 14, 2016). Based on the evidence presented, including the video showing Defendants restraining Plaintiff, the Court finds that there is no genuine issue of material fact as to whether Defendants were justified in going into Plaintiff's cell and using physical force to subdue him or that excessive force was used.

6

Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claim arising from his extraction from his cell.

***Placement in the Restraint Chair***

The Magistrate Judge also correctly found that the evidence justifying the use of force to extract Plaintiff from his cell also justified placing him in a restraint chair. *See Cooper v. Williams*, C/A No. 1:20-cv-280-RDA-TCB, 2021 WL 3779633, at *11 (E.D. Va. Aug. 24, 2021) ("The evidence of Plaintiff's disruptive and aggressive behavior that necessitated the use of the Extraction Team justified the deputies' concern that Plaintiff should be placed in a restraint chair."). Placing an uncooperative inmate in a restraint chair to maintain "order and control" is not by itself an excessive use of force. *See Rodriguez v. Taylor*, C/A No. 9:08-cv-01027-RBH, 2008 WL 5244480, at *8 (D.S.C. Dec. 15, 2008) ("Plaintiff's placement in a restraint chair . . . does not in and of itself constitute an excessive use of force, as the use of devises such as restraint chairs or four-point bed restraints have repeatedly been found to be constitutional when used appropriately.").

The evidence in the record shows that, prior to being placed in the restraint chair, Plaintiff was combative, uncooperative, and deemed to be a security threat by corrections officers. Plaintiff acknowledged in his testimony that he was not complying with the corrections officers' instructions, and Defendants' contemporaneous reports confirm that. (Dkt. No. 75 at 24-29). Although Plaintiff contends that his restraint violated ASGDC policy, he has not supported that assertion with evidence. Based on the evidence submitted by Defendants, it appears that all policies and procedures were followed when Plaintiff was placed in the restraint chair. (Dkt. No. 67-22 at 8) (Harvey Affidavit detailing Restraint Chair Policy). Therefore, there is no dispute of material

fact as to whether Defendants properly complied with ASGDC policy when placing Plaintiff in the restraint chair.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's excessive force claim arising from his initial placement in the restraint chair.

### *Duration in the Restraint Chair*

Plaintiff claims that the six hours Defendants kept him in the restraint amounted to excessive force. "Continuing to hold an inmate in a restraint chair for an extended period of time following an incident can give rise to a genuine issue of fact as to whether a constitutional violation occurred." *See Singleton*, 2016 WL 11200707, at *16 (finding the plaintiff's contentions that he was held in a restraint chair for six hours, which was longer than the four-hour maximum, was insufficient to establish a constitutional violation).

However, Defendants have failed to submit evidence showing that Plaintiff's continued confinement in the restraint chair for more than six hours was justified to the point that they are entitled to summary judgment. The Court therefore finds that there is a genuine issue of material fact concerning whether Plaintiff's behavior during the six hours he remained in the chair warranted such ongoing restraint and was done in a good faith effort to restore order, or whether the continued confinement was malicious and sadistic to cause harm. *See Williams v. Benjamin*, 77 F.3d 756, 771 (4th Cir. 1996) (explaining that for a prisoner to prevail on an Eighth Amendment claim he must demonstrate that officials applied force maliciously and sadistically for the very purpose of causing harm).

Accordingly, Defendants' Motion is denied as to Plaintiff's claim for excessive force for the ongoing use of the restraint chair for six hours against Defendants Sapp, Church, Stackhouse,

Bridgette, and Lark. Defendants Goldwire, Havey, and Faulks are entitled to dismissal for the reasons explained above.

### *Retaliation*

The Magistrate Judge correctly found that Plaintiff has failed to establish a retaliation claim under the First Amendment because Plaintiff identified no constitutionally protected speech, any action that adversely affected that speech, or a connection between that speech and Defendants' actions. (Dkt. No. 75 at 46). A retaliation claim arises under the First Amendment, which prohibits laws "abridging the freedom of speech." U.S. Const. amend. I. The First Amendment prohibits public officials from retaliating against individuals for having engaged in protected speech. *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 545 (4th Cir. 2017). To state a First Amendment retaliation claim, a plaintiff "must allege that: (1) he engaged in protected First Amendment activity; (2) the defendant took some action that adversely affected his First Amendment rights; and (3) there was a causal relationship between his protected activity and the defendant's conduct." *Martin v. Duffy*, 977 F.3d 294, 299 (4th Cir. 2020).

Here, Plaintiff has not plausibly alleged, or offered any supporting evidence, that he was engaged in a protected First Amendment activity or that there was a connection between that activity and an adverse action by Defendants. Plaintiff asserts the extraction and placement in a restraint chair was retaliation for "banging on his cell door, yelling for help, and refusing to strip for the officers in question." (Dkt. No. 28 at 13). However, such activities are not protected under the First Amendment. *See Huff v. Mahon*, 312 F. App'x 530, 532 (4th Cir. 2009) ("An inmate does not have a First Amendment right to direct disrespectful comments to a prison official, whether verbally or in writing, because the prison's legitimate penological interests in promoting order and discipline, and in controlling violence clearly necessitate the prohibition of such comments.")

(cleaned up). Therefore, without an assertion of protected speech there can be no plausible claim for retaliation.

Accordingly, Defendants are entitled to summary judgment as a matter of law on Plaintiff's retaliation claim

## B. Failure to Protect

Plaintiff's third cause of action asserts claims for failure to protect against Defendants Cousar, Turner, and Holmes under the Fourteenth Amendment. Plaintiff alleges that Cousar "let a detainee out of his cell, allowed the detainee to access Plaintiff in the commissary area, and turned out the lights in the commissary area to facilitate the detainee's attack on Plaintiff, which resulted in Plaintiff being stabbed six (6) times with a homemade weapon the attacker fashioned inside the ASGDC." (Dkt. No. 28 at 16-17). Plaintiff alleges that he had a pre-existing disagreement with his attacker. (*Id.* at 7).

The Fourth Circuit has held that a pretrial detainee's failure to protect claim is evaluated under an entirely objective standard. *Hammock v. Andoh*, No. 22-7159, 2024 WL 33694, at *1 (4th Cir. Jan. 3, 2024). A pretrial detainee must establish that a defendant exposed him to "an objective substantial risk of serious harm…that a reasonable official in [Defendant's] position would have appreciated." *Carmona v. Martin*, No. 23-6930, 2024 WL 4490695, at *2 (4th Cir. Oct. 15, 2024) (cleaned up).

Defendants have moved for summary judgment on the failure to protect claim, arguing there is no evidence to support Plaintiff's allegations, they had no duty to intervene in the altercation, and that they responded appropriately to the altercation. (Dkt. No. 67-1 at 19-21). Plaintiff did not respond to Defendant's arguments and has not moved for summary judgment on his failure to protect claims. When a party fails to respond to a motion for summary judgment, the

motion can be decided solely on the basis of the movant's submissions. "[M]any courts within the Fourth Circuit, as well as other circuits, have held that a plaintiff's failure to respond to a summary judgment motion constitutes waiver or abandonment of a claim." *Roberts v. Holder*, C/A No. 1:08-cv-1011-LMB-TRJ, 2009 WL 691212, at *5 (E.D. Va. Mar. 13, 2009). *See* Fed. R. Civ. P. 56(c)(3) (in ruling on motion for summary judgment, "[t]he court need consider only the cited materials.").

Defendants' motion, supported by evidence in the record, challenges Plaintiff's assertions and argues they are entitled to summary judgment as to this claim. "As the nonmoving party, Plaintiff[] must . . . produce specific facts showing that there is a genuine issue for trial." *Perez v. Arnold Transportation*, C/A No. 3:15-cv-3162-TLW, 2018 WL 2301850, at *3 (D.S.C. Feb. 12, 2018) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "Plaintiff[] may not rest on mere allegations or denials; [he] must produce 'significant probative evidence tending to support the complaint.'" *Id*. (quoting *Celotex*, 477 U.S. at 248).

The Magistrate Judge correctly found that Plaintiff's failure to protect claim against Cousar and Holmes fails to state a claim because there is no evidence that Cousar and Holmes knew of and disregarded a substantial risk of serious injury posed to Plaintiff by his alleged attacker. (Dkt. No. 75 at 59). There is no record showing that Defendants were aware of Plaintiff's previous relationship with his alleged attacker, and Plaintiff himself stated he did not know he was at the same facility. (Dkt. No. 70-9 at 22, 30). Without any such information, Cousar and Holmes could not have appreciated a substantial risk of serious harm.

Plaintiff has failed to present evidence to support the allegations in the Complaint or the assertions he made in his deposition that Cousar set him up or orchestrated the assault. At his deposition, Plaintiff acknowledged that there is no evidence that he was even stabbed. (Dkt. No. 70-9 at 36).

Accordingly, Defendants Cousar and Holmes are entitled to summary judgment on Plaintiff's failure to protect claim. Defendant Turner is entitled to dismissal for the reasons stated above. Defendant Holmes may be dismissed from this action entirely as this is Plaintiff's only claim against her.

### C. Conditions of Confinement

Plaintiff's fifth cause of action asserts claims for unconstitutional conditions of confinement against Defendants Cousar, Sapp, Stackhouse, Church, Bridgette, and John Doe under the Eighth and Fourteenth Amendments. Plaintiff alleges in the Amended Complaint that Defendants "had knowledge of a significant number of detainees at the ASGDC who were housed in unsanitary conditions, denied hot showers, denied food, and improperly subjected to isolation in the shower cage and yet still failed to ensure Plaintiff was housed in sanitary conditions and properly fed." (Dkt. No. 28 at 21).

A pretrial detainee's claims for conditions of confinement arise under the Due Process Clause of the Fourteenth Amendment. The Fourteenth Amendment prohibits conditions of confinement that amount to punishment of a pretrial detainee, because "a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). A condition or restriction of confinement is impermissible under the Fourteenth Amendment when it is "(1) imposed with an expressed intent to punish or (2) not reasonably related to a legitimate nonpunitive governmental objective, in which case an intent to punish may be inferred." *Martin v. Gentile*, 849 F.2d 863, 872 (4th Cir. 1988). However, "[t]he Constitution 'does not mandate comfortable prisons,' and only those deprivations denying 'the minimal civilized measure of life's necessities,' are sufficiently grave to form the basis of [a constitutional] violation." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347, 349 (1981)).

The Magistrate Judge correctly found that Plaintiff has failed to produce evidence to support a conditions of confinement claim, and Defendants are therefore entitled to summary judgment on those claims. (Dkt. No. 75 at 62). Plaintiff's own testimony contradicts many of the allegations he makes in the Amended Complaint. In the Complaint, Plaintiff says that was provided sandwiches, but the officer could not say whether it was beef or pork, and he is "a devout Muslim and has several dietary restrictions, including the restriction that he not consume pork." (Dkt. No. 28 at 5). In his deposition Plaintiff testified that, "I don't really have any [religious] denomination…I don't really call myself religious at all." (Dkt. No. 70-9 at 23). Plaintiff has not presented evidence—other than his own unsubstantiated conjecture—showing that any of the food he was served contained pork. On the other hand, Defendants have provided evidence showing that ASGDC does not serve pork at all. (Dkt. No. 67-22 at 8).

The Fourth Circuit has recognized that "inmates must be provided nutritionally adequate food, prepared and served under conditions which do not present an immediate danger to the health and wellbeing of the inmates who consume it." *Shrader v. White*, 761 F.2d 975, 986 (4th Cir. 1985) (cleaned up). The record before the Court, including Plaintiff's own concessions in his deposition testimony, demonstrates that Plaintiff was provided food and water. Plaintiff's refusal to eat the meals provided because they were not up to his standards is not a sufficient basis to find a constitutional violation.

Plaintiff has pointed to the Court's finding in *Butler v. Richland County* showing severe deficiencies and understaffing at ASGDC as evidence for his conditions of confinement case. C/A No. 8:22-cv-2541-RMG, 2025 WL 892576 (D.S.C. Mar. 24, 2025). In *Butler*, the Court recounted the deplorable conditions at ASGDC regarding a plaintiff who was "allegedly bitten and tormented by rats" and whose cell was "so infested with flies and gnats that flies flew out of [plaintiff's]

13

mouth." *Id.* at 7. The Court does not deny the findings of unacceptable conditions at ASGDC shown in other similar cases. However, Plaintiff cannot rely on these other cases to establish his own conditions of confinement claim absent a showing of evidence that he was subjected to those same conditions. The record before the Court does not establish that the conditions of confinement Plaintiff was subjected to violate his constitutional rights.

Accordingly, the Court finds that there is no genuine dispute as to a material fact and Defendants Cousar, Sapp, Stackhouse, Church, Bridgette, and John Doe are entitled to summary judgment as to Plaintiff's conditions of confinement claim.

### D. Deliberate Indifference to Serious Medical Needs

Plaintiff's seventh cause of action asserts claims for deliberate indifference to serious medical needs against all individually named Defendants under the Eighth and Fourteenth Amendments. (Dkt. No. 28 at 25-28). Plaintiff points to two alleged injuries, a finger injury obtained during the extraction from his cell and an alleged stabbing injury obtained during an altercation with a fellow inmate.

A pretrial detainee's claim for deliberate indifference to a medical need is properly brought under the Fourteenth Amendment. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021). To establish this claim, a pretrial detainee must show that (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023). A condition is a serious medical need if it is "diagnosed by a physician as mandating treatment" or is "so obvious that even a lay

person would easily recognize the necessity for a doctor's attention." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016).

As to Plaintiff's allegations regarding deliberate indifference to his finger injury, he has not produced evidence showing that any Defendant knew of a serious medical need and was deliberately indifferent to that need. As to the alleged stabbing injury, Plaintiff has failed to identify any evidence showing a Defendant was deliberately indifferent or that he was in fact stabbed and required medical attention. Plaintiff's medical records from after the altercation indicate scratches, abrasions, and bruising but no stab wounds. (Dkt. No. 67-22 at 58). The evidence in the record shows that Defendant Holmes took Plaintiff for medical care following the altercation. (Dkt. No. 67-18 at 2).

Based on the evidence before the Court, there is no genuine issue of material fact in dispute, and all the individual Defendants are entitled to summary judgment as to Plaintiff's claims for deliberate indifference to serious medical needs.

### E. *Monell* Claims Against Richland County

Plaintiff's second (excessive force), fourth (failure to protect), sixth (conditions of confinement), and eighth (deliberate indifference to medical needs) causes of action are *Monell* claims brought against Harvey in his official capacity as the Interim Director of ASGDC and Richland County.

Harvey is entitled to summary judgment on these claims as they are duplicative. A claim against a government official in their official capacity is "essentially a claim against" the entity the official represents. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Under *Monell*, local governments can be sued directly for damages and there is no need to bring an official-capacity action against officials. *Id*. at 167. Therefore, the Court dismisses Plaintiff's claims against Harvey.

"[A] municipality is liable under § 1983 if it follows a custom, policy, or practice by which local officials violate a plaintiff's constitutional rights." *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014). A plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Washington v. Hous. Auth. of the City of Columbia*, 58 F.4th 170, 182 (4th Cir. 2023) (cleaned up). This causation standard is "rigorous…to ensure that the municipality is not held liable solely for the actions of its employee[s]." *Id*. (cleaned up). "[A] plaintiff must identify a specific deficiency and establish that deficiency's causal connection to the specific violation." *Id*. (cleaned up).

Plaintiff's *Monell* claims against Richland County fails because he has not established a constitutional violation as to any of his claims as detailed above. *Monell* claims require "a predicate constitutional violation to proceed." *Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012). A municipality cannot be held liable under 42 U.S.C. § 1983 without "some predicate constitutional injury at the hands of the individual officer." *Id.* (cleaned up). Because Plaintiff has failed to show that any individual officer violated his constitutional rights, the *Monell* claims against Richland County fail because the predicate claims against the individuals have failed. While the Court has denied summary judgement as to the excessive force claim as it pertains to the amount of time Plaintiff was confined to the restraint chair, Plaintiff's Amended Complaint does not bring a *Monell* claim against Richland County for the duration of time spent in the restraint chair. Further, Plaintiff has not show that Richland County had a custom or practice of confining detainees in a restraint chair for longer than is necessary. Therefore, the Court grants summary judgment to Richland County on Plaintiff's *Monell* claims.

### F. South Carolina Tort Claims Act

Plaintiff's ninth cause of action asserts a claim for gross negligence under the South Carolina Tort Claims Act ("SCTCA") against Richland County. (Dkt. No. 28 at 28-31). Plaintiff's Amended Complaint alleges that Richland County, "by and through its employees and agents, owed a duty to Plaintiff, including a special duty to him while in their custody to act in a prudent and reasonable manner with regard to his health and safety," but violated "ministerial duties" and "customs or policies." *Id.* The SCTA is a limited waiver of the government's immunity and explicitly preserves that immunity for any loss resulting from a failure to enforce an ordinance. *Adkins v. Varn*, 439 S.E.2d 822, 824 (S.C. 1993).

Here, Plaintiff's allegations rest on Richland County's failure to enforce its own policies at ASGDC. Because this claim falls within the statute's exclusion, Richland County is immune from liability. S.C. Code § 15-78-60(4); *see Shelton v. Newberry Cnty. Sch. Dist.*, No. CV 8:16-3728-AMQ-KFM, 2018 WL 4573094, at *14 (D.S.C. May 17, 2018) (explaining that § 15-7860(4) of "the SCTCA includes as an exception to the waiver of immunity loss resulting from both the enforcement of and failure to enforce any written policies.").

Plaintiff's claim for punitive damages against Richland County similarly fails as a matter of law. The Supreme Court has held that municipalities are immune from punitive damages under 42 U.S.C § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981).

Therefore, the Court grants summary judgment to Richland County on Plaintiff's SCTA claim.

### IV. Conclusion

In light of the foregoing, the Court **ADOPTS** as the Order of the Court the Magistrate Judge's Report and Recommendation (Dkt. No. 75). Consequently, the Court **DENIES** Plaintiff's

Motion for Partial Summary Judgment (Dkt. No. 68) and **GRANTS IN-PART** and **DENIES IN-PART** Defendant's Motion for Summary Judgment (Dkt. No. 67). Defendants are entitled to summary judgment on all claims except for Plaintiff's excessive use of force claim regarding the amount of time spent in the restraint chair as to Defendants Sapp, Church, Stackhouse, Bridgett, and Lark. All other Defendants are entitled to summary judgment.

    **AND IT IS SO ORDERED**

                                                              s/ Richard Mark Gergel
                                                              Richard Mark Gergel
                                                              United States District Judge

September 29, 2025
Charleston, South Carolina